IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

DEBRA A. TURNER,           )
                           )
    Plaintiff,             )
                           )
                           )       CIV-12-536-M
v.                         )
                           )
CAROLYN W. COLVIN,         )
  Acting Commissioner of Social )
  Security Administration[1], )
                           )
    Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

1

§ 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications in June 2009 and alleged she became disabled on May 4, 2009, due to back problems, carpal tunnel syndrome, depression, and anxiety. A hearing was conducted on her applications in September 2010 before Administrative Law Judge Kirkpatrick ("ALJ"). At the hearing, Plaintiff testified she was 47 years old, had previously worked for 7 years as a healthcare coordinator for an adult long-term care facility, and had stopped working on May 4, 2009. She was receiving unemployment benefits at the time of the hearing. She described difficulty using her hands due to numbness and pain in her hands, arms, and neck, and difficulty walking, standing, sitting, concentrating, and bending due to lower back pain. She took medication for anxiety prescribed by her treating paraprofessional, but she did not take medications for pain or other conditions, and she was not receiving mental health treatment. She did not drive because she did not own a vehicle, and a neighbor drove her to appointments and for grocery shopping. A vocational expert ("VE") also testified at the hearing.

The sparse medical record contains the office notes from Plaintiff's treating medical clinic for the time period between January 2007 and May 2010 reflecting Plaintiff was prescribed medications on various occasions for anxiety, depression, and allergies. These notes indicate Plaintiff was seen about every one to two months for medication refills. Although the notes sometimes include objective findings made by the examiner, those

findings are illegible. The record also includes reports of emergency room treatment of Plaintiff in June 2009 for sinusitis, in November 2009 for a dental cavity, and in December 2009 for a left ankle sprain, as well as the reports of the consultative examiners, Dr. Cooper and Dr. Al-Botros.

In November 2010, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Social Security Act. Following the well-established sequential evaluation procedure, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 4, 2009, her alleged disability onset date. At step two, the ALJ found that Plaintiff had a severe impairment due to lumbar disc disease. At the third step, the ALJ found that Plaintiff's impairment did not satisfy or equal the requirements of an impairment deemed disabling *per se* by the agency. At step four, the ALJ found that Plaintiff's allegations of disabling pain and nonexertional limitations were not entirely credible and that Plaintiff was capable of performing work at the medium exertional level[2] except that she could not stoop more than occasionally. Relying on the VE's testimony concerning the exertional demands of Plaintiff's previous job as a mental retardation aide, the ALJ found that Plaintiff was capable of performing this previous job and she was therefore not disabled.

The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall

---

[2]Medium work requires the ability to lift up to 50 pounds and frequently lift or carry objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c). The agency has determined that the ability to do medium work is also a determination that the individual can do sedentary and light work. Id.

3

v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Evaluation of Consultative Psychiatrist's Report

Plaintiff contends that the ALJ erred in evaluating the report submitted by Dr. Al-Botros. Dr. Al-Botros, a psychiatrist, evaluated Plaintiff for the agency in September 2009. In his report of the consultative evaluation, Dr. Al-Botros summarized his interview of Plaintiff and her responses during a mental status evaluation. At the conclusion of the report, Dr. Al-Botros stated his diagnostic impression of "Major Depression, recurrent episode, moderate without suicidality or psychotic features" and "Post-Traumatic Stress Disorder

(previous diagnosis)" with a "Current GAF" of 40.[3] (TR 192-193). Dr. Al-Botros noted that Plaintiff "appears profoundly depressed" and "at this point in time, she is totally disabled." (TR 193). However, the psychiatrist posited that Plaintiff "may well improve over the next twelve months with proper antidepressant therapy" as she was not taking antidepressant medication. (TR 193).

The ALJ devoted a generous portion of the decision to a discussion of Dr. Al-Botros' report. The ALJ summarized the report, including Dr. Al-Botros' diagnostic impressions. The ALJ considered Dr. Al-Botros' statements in relation to other medical evidence in the record and reasoned that Plaintiff's "treatment records do not reflect the same severity of subjective complaints to her treating physician and/or an attempt to obtain more aggressive treatment." (TR 13-14). Plaintiff contends that this was not a valid reason for rejecting the opinion because Plaintiff lacked the funds for treatment. However, the record shows that Plaintiff was treated at a medical clinic for low-income patients. As the ALJ pointed out, the office notes of her treatment at this clinic did not contain findings of severe mental-related symptoms or resulting functional limitations.

The ALJ also considered Dr. Al-Botros' impression concerning Plaintiff's then-current level of functioning and reasoned that "[t]he findings set forth in Dr. Al-Botros report

---

[3]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing Am. Psychiatric Assoc'n, Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32). A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas." DSM IV, pp. 32-34.

do not appear to substantiate a diminished ability to work in the sub-51 GAF range; especially considering he also opined that her condition could reasonably improve with proper anti-depressant medication." (TR 14). The ALJ further reasoned that, in light of pertinent circuit court precedent, a GAF score is not alone dispositive of the issue of disability because it may indicate problems not necessarily related to the claimant's ability to hold a job. (TR 14).

Following the agency's regulatory procedure for evaluating mental impairments, 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ found that Plaintiff's mental impairments had caused "no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation" of extended duration and the impairments were thus "non-severe."[4] (TR 14). The ALJ further reasoned that this conclusion was consistent with the opinion of the non-examining medical consultant. (TR 14). Dr. Hartley, a psychologist acting as a medical consultant for the agency, opined in November 2009 based on a review of the medical record that Plaintiff's anxiety impairment was not severe because it had resulted in only "mild" functional limitations and "no" episodes of decompensation of extended duration. (TR 202, 212).

Plaintiff objects that the ALJ never indicated what weight he had given to Dr. Al-Botros' opinion. However, Dr. Al-Botros' statement that Plaintiff was "totally disabled" at

---

[4] The regulations require an ALJ to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," and then evaluate the degree of functional loss resulting from the impairment. 20 C.F.R. § 404.1520a, 416.920a. See Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir. 1995)(internal citation omitted).

the time of the evaluation was an opinion on an issue reserved to the Commissioner. Moreover, as the ALJ pointed out, Dr. Al-Botros clearly stated that Plaintiff's mental impairment could improve with medications, and that she was not taking antidepressant medications at that time.

The ALJ must consider the opinion of every medical source and provide specific, legitimate reasons for rejecting it. Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); see SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). When evaluating the opinion of a medical source, the ALJ must consider certain factors, as outlined in 20 C.F.R. §§404.1527(d) and 416.927(d).

Here, the ALJ considered several of the relevant factors, including the degree to which Dr. Al-Botros' opinion was supported by evidence in his report and the consistency of the opinion with the record as a whole. Reviewing the record in this light, the ALJ adequately considered the opinion of Dr. Al-Botros. Plaintiff has not pointed to other relevant evidence in the record that the ALJ failed to consider in connection with Dr. Al-Botros' report and diagnostic impressions.

The ALJ did not err in his evaluation of Dr. Al-Botros' diagnostic impression of Plaintiff's then-current level of functioning. Dr. Al-Botros did not relate the GAF score to any work-related limitations, and, as the ALJ accurately pointed out, "a low GAF score does not alone determine disability." Butler v. Astrue, 412 Fed.Appx. 144, 147 (10th Cir. 2011)(unpublished op.). The ALJ considered the low GAF score and gave valid, well-

supported reasons, including the absence of evidence of resulting significant functional limitations, for finding the low GAF score was not indicative of a severe mental impairment.

In a related argument, Plaintiff contends that the ALJ should have ordered an additional consultative evaluation because a year elapsed between Dr. Al-Botros' report of his consultative psychiatric evaluation of Plaintiff and the date of the ALJ's decision. "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. United States Dep't of Health and Human Servs., 13 F.3d 359, 360-361 (10th Cir. 1993). "It is not the ALJ's duty, however, to be the claimant's advocate," and "the ultimate burden of proving that [the claimant] is disabled under the regulations" is borne by the claimant. Id. at 361. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)(quotation omitted).

In this case, Plaintiff did not request an additional mental health consultative evaluation. Moreover, nothing in the record indicates any alteration in the severity of Plaintiff's mental impairment during the intervening time period that should have prompted further evaluation by a consultative examiner. The ALJ did not err in failing to order a second psychiatric evaluation of Plaintiff.

IV. Step Two Finding of Non-Severe Mental Impairment

Plaintiff contends that there is not substantial evidence to support the ALJ's finding of a non-severe mental impairment due to depression. Plaintiff points only to her own testimony and to Dr. Al-Botros' diagnostic impression as support for her argument.

At step two, the ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987). This determination is governed by the agency's "severity regulation" at 20 C.F.R. § 404.1520(c) (2007). Pursuant to this regulation, the claimant must make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 750-751 (10th Cir. 1988). Although the claimant must make only a "de minimis"showing that the medical condition is medically severe, "the claimant must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

The ALJ found that Plaintiff had a medically-determinable mental impairment and followed the requisite procedure for evaluating the impairment. See 20 C.F.R. §§ 404.1520a, 419.920a. Once the ALJ finds the presence of a medically-determinable mental impairment, this procedure requires the ALJ to evaluate the degree of functional loss resulting from the impairment in four areas, activities of daily living, social functioning, concentration, persistence, or pace, and any episodes of decompensation of extended duration. See 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). The ALJ is required to "incorporate the

pertinent findings and conclusions" in his or her decision, 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2), and relate the medical evidence to those conclusions.

The ALJ followed the established procedure and found that Plaintiff's medically-determinable mental impairments had not resulted in significant functional limitations of the kind needed to show the existence of a severe mental impairment. Plaintiff has not pointed to evidence in the record that was probative of this issue and not considered by the ALJ.

At the hearing, Plaintiff stated she stopped working in May 2009, and she did not indicate that she stopped working due to a mental impairment. Plaintiff's testimony was almost entirely devoted to physical symptoms. She stated that she took anti-anxiety medication, but she did not relate any functional limitations to anxiety. She stated she was not undergoing counseling or other therapy, and she stated she did not experience side effects from her anti-anxiety medication. The record does not reflect Plaintiff's treatment for persistent, severe symptoms of depression or anxiety or resulting functional limitations. The ALJ considered the evidence in the record, and the ALJ's step two finding of a non-severe mental impairment is well supported by the record.

V. Step Four Finding of Ability to Perform Past Relevant Work

At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The ALJ must undertake a three-phase analysis at step four. In the first phase, the ALJ must evaluate the claimant's mental and physical RFC. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir.

1996). RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). In the second phase, the ALJ must determine the mental and physical demands of the claimant's past relevant work. Bowman, 511 F.3d at 1272 (quotations and citation omitted); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Social Security Ruling 82-62, "Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General," 1982 WL 31386, at 4 (1982). In the third phase, the ALJ must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Winfrey, 92 F.3d at 1023 (citations omitted). The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).

Plaintiff first contends that the ALJ did not make specific findings concerning the exertional demands of Plaintiff's previous job and "improperly relied" on the VE's testimony to support the conclusion that Plaintiff could perform her previous job as a mental retardation aide.

The VE testified that Plaintiff's previous job as a mental retardation aide was medium, skilled work. (TR 43). The ALJ elicited testimony of the VE as to whether an individual with the same vocational characteristics of Plaintiff and who could perform medium work involving only occasional stooping could perform this previous job. (TR 43). The VE testified that such an individual could perform this job. (TR 43). The ALJ then questioned the VE concerning the specific exertional demands of this job as it is described in the

Department of Labor's Dictionary of Occupational Titles ("DOT") and any inconsistencies between the VE's testimony and the DOT's information regarding the position, and the VE testified that there was no conflict between her testimony and the DOT. (TR 43-44). Although given the opportunity, Plaintiff did not question the VE.

Plaintiff does not indicate in what manner the ALJ's step four findings regarding the Plaintiff's previous job was faulty. Plaintiff's arguments that the "record does not contain substantial evidence supporting the ALJ's finding that Turner retained the ability to perform full-time work" is perfunctory and not supported. The ALJ's decision includes the necessary findings regarding the demands of Plaintiff's previous work, and the record contains evidence, both from Plaintiff's own statements (TR 142)[5] and the VE's testimony, to support those findings.

Plaintiff complains that the ALJ did not provide an adequate analysis to support the credibility finding. However, as reflected in the ALJ's decision, the ALJ considered Plaintiff's testimony and statements in the record concerning the severity of her symptoms. The ALJ further considered the objective medical evidence and pointed out specific instances of inconsistencies between the record and Plaintiff's subjective statements. (TR 15-17). For instance, the ALJ reasoned that "[t]he evidence of record reveals normal objective signs and

---

[5]In fact, Plaintiff stated that she did not lift any object weighing more than 15 pounds in this position and she frequently lifted only 5 pounds. (TR 142). As Plaintiff described the position, it would have been performed at a light exertional level rather than a medium exertional level. Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

findings at the physical and mental status examinations. Claimant is not taking any pain medication and doctor's progress notes do not indicate complaints of severe or frequent pain[,] which is not consistent with her allegations of debilitating pain." (TR 17). The ALJ also pointed out that Plaintiff was receiving unemployment benefits and in order to receive unemployment benefits she must declare under penalty of perjury she is able to work, a statement that "does not lend credibility to her allegations of disability." (TR 17).

The ALJ adequately explained his reasons, which are well supported by the record, for discounting Plaintiff's credibility. Because the ALJ's decision is supported by substantial evidence in the record and no error occurred in connection with the ALJ's evaluation of the evidence, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____August 26th__, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

13

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___5th___ day of ___August___, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE